Patricia Ann GLOVER; Michael R. Macrander; Susan I. Davidson; Mary St. George; Rebecca A. Demuth; Timothy Sikora; Daphne Holmes; Shawne A. Kinsman; Daniel B. Champ, on behalf of themselves and all other persons similarly situated, Appellees,

v.

EASTERN NEBRASKA COMMUNITY OFFICE OF RETARDATION; Eastern Nebraska Human Services Agency; Michael Albert; Donald Claasen; Ronald Hineline; Ray Lind; Rogers Hilton, in their capacities as members of the Governing Board of the Eastern Nebraska Human Services Agency; Ray Christianson; Donald Moray, Appellants,

The American Public Health Association, Amicus Curiae.

No. 88–1678.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1988.

Decided Feb. 6, 1989.

---

Bruce G. Mason, Omaha, Neb., for appellants.

Patrick W. Kennison, Omaha, Neb., for appellees.

Before HEANEY * and FAGG, Circuit Judges, and HANSON,** Senior District Judge.

* The HONORABLE GERALD W. HEANEY assumed senior status on January 1, 1989.

FAGG, Circuit Judge.

This case concerns the validity of a Nebraska administrative agency's personnel policy requiring certain employees to submit to blood testing for the viruses associated with acquired immune deficiency syndrome (AIDS) and hepatitis B. In this class action brought by affected employees, the district court held the policy violated the employees' fourth amendment rights against unreasonable searches and seizures. *Glover v. Eastern Neb. Community Office of Retardation,* 686 F.Supp. 243, 251 (D.Neb.1988). The court issued a corresponding order permanently enjoining implementation of the challenged portions of the policy. After carefully considering the district court's decision, we affirm.

Eastern Nebraska Human Services Agency (ENHSA) is a state agency dedicated to serving the needs of mentally retarded persons in Nebraska. Eastern Nebraska Community Office of Retardation (ENCOR) is a subagency of ENHSA covering a five-county area in the eastern part of the state. In response to a variety of events, ENHSA in 1987 adopted its Chronic Infectious Disease Policy No. 8.85. The policy, which applies to certain designated job descriptions, includes mandatory blood testing for the AIDS and hepatitis B viruses. In addition to testing, the policy requires employees to inform a personnel officer when they know or suspect they have one of the infectious diseases and to disclose medical records relating to treatment they receive for those diseases. Medical indications of the diseases or violation of the policy have employment consequences.

ENHSA's stated purpose for the policy is "the pursuit of a safe work environment for all employees and a safe training and living environment for all developmentally disabled persons receiving services from the [a]gency." The policy applies to job descriptions in which direct contact with clients occurs most frequently. The ratio-

** The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

nale for testing these employees is ENHSA's concern that clients who engage in violent or aggressive behavior associated with their conditions, such as biting and scratching, risk contracting one of the diseases from an infected employee.

After an initial court challenge, ENHSA revised the policy and readopted it in 1988. Several affected ENCOR employees then brought this class action, challenging the policy on a number of constitutional and statutory grounds.

During a trial to the court, the parties presented extensive evidence. This evidence included expert testimony on the following: the medical, psychological, and behavioral characteristics of the clients ENCOR serves; the training ENCOR employees receive; and the medical characteristics of the AIDS and hepatitis B viruses.

Based on this evidence, the court found:

The evidence establishes that the risk of transmission of the AIDS virus from staff to client, assuming a staff member is infected with [the AIDS virus], in the ENCOR environment is extremely low, approaching zero. The medical evidence is undisputed that the disease is not contracted by casual contact. The risk of transmission of the disease to clients as a result of a client biting or scratching a staff member, and potentially drawing blood, is extraordinarily low, also approaching zero. The risk of transmission of the virus from staff to client due to the staff member attending to a client's personal hygiene needs is zero. Further, there is absolutely no evidence of drug use or needle sharing at ENCOR, nor is there a problem of sexual abuse of clients by staff.

In short, the evidence in this case establishes that the risk of transmission of the [AIDS] virus at ENCOR is minuscule at best and will have little, if any, effect in preventing the spread of [AIDS] or in protecting the clients. Further, from a medical viewpoint, this policy is not necessary to protect clients from any medical risks.

*　　*　　*　　*　　*　　*

*　*　* There [also] is no evidence in this case that the clients are at risk of contracting [the hepatitis B virus] from staff members.

*Glover,* 686 F.Supp. at 249, 251. Relying primarily on these findings, the district court concluded that under the fourth amendment, the mandatory blood testing policy was "not justified at its inception" for either the AIDS virus, *id.* at 250, or the hepatitis B virus, *id.* at 251. We agree.

■ Mandatory blood testing is a search and seizure that must comply with the standards of reasonableness imposed by the fourth amendment. *Schmerber v. California,* 384 U.S. 757, 767–68, 86 S.Ct. 1826, 1833–34, 16 L.Ed.2d 908 (1966). The search's reasonableness is measured by "'balanc[ing] the nature and quality of the intrusion on the individual's [f]ourth [a]mendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *O'Connor v. Ortega,* 480 U.S. 709, 719, 107 S.Ct. 1492, 1499, 94 L.Ed.2d 714 (1987) (quoted citations omitted). ENHSA contended at oral argument that a lesser standard should apply because its clients are a particularly susceptible population. We believe, however, the district court correctly recognized that in this case, the Supreme Court standard requires us to balance the employees' reasonable expectations of privacy against ENHSA's interest in providing a safe training and living environment for its clients. *See Glover,* 686 F.Supp. at 250.

■ ENHSA bases its arguments on appeal primarily on a number of cases dealing with drug testing of persons subject to certain state-regulated environments. *See, e.g., Rushton v. Nebraska Pub. Power Dist.,* 844 F.2d 562 (8th Cir.1988) (nuclear power plant employees); *Jones v. McKenzie,* 833 F.2d 335 (D.C.Cir.1987) (school transportation employees), *petition for cert. filed,* 56 U.S.L.W. 3739 (U.S. Apr. 15, 1988) (No. 87–1706); *National Treasury Employees Union v. Von Raab,* 816 F.2d 170 (5th Cir.1987) (customs employees), *cert. granted,* —— U.S. ——, 108 S.Ct. 1072, 99 L.Ed.2d 232 (1988); *McDonnell v. Hunter,* 809 F.2d 1302 (8th Cir.1987) (correction-

al institution employees); *Spence v. Farrier*, 807 F.2d 753 (8th Cir.1986) (prison inmates); *Shoemaker v. Handel*, 795 F.2d 1136 (3d Cir.) (horse racing employees), *cert. denied*, 479 U.S. 986, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986).

Relying on these cases, ENHSA argues the district court committed error in failing to: (1) recognize that the employees here work for a highly regulated state agency and, thus, have only a diminished expectation of privacy; (2) take into account the "strong and compelling" nature of ENCOR's interest in protecting its mentally retarded clients; (3) analyze the blood testing policy as an administrative search; and (4) find the proposed testing procedures were reliable methods of detecting the diseases. We conclude each of these arguments, however, misses the mark in view of the factual findings made by the district court.

The district court found the risk that ENCOR clients will contract the AIDS virus from the employees is "miniscule, trivial, extremely low, extraordinarily low, theoretical, and approaches zero." *Glover*, 686 F.Supp. at 251. The court made similar findings with regard to the hepatitis B virus. *Id.* We have carefully reviewed the record, and these findings are not clearly erroneous. *See* Fed.R.Civ.P. 52(a).

These critical findings also lead unmistakably to the conclusion that ENHSA's blood testing policy is not reasonable at its inception under applicable fourth amendment standards. Because the risk of disease transmission has been shown to be negligible in the ENCOR environment, ENHSA's articulated interest in requiring testing does not constitutionally justify requiring employees to submit to a test for the purpose of protecting the clients from an infected employee.

The district court did not take lightly, nor do we, the severe nature of the diseases at which ENHSA's policy is aimed. By our decision we intend no broad-based rule with regard to testing public employees for any infectious disease, including AIDS. We hold only that under the facts established in this case, the district court

properly enjoined ENHSA's policy as an unreasonable search and seizure under the fourth amendment. Finding no error of fact or law, we affirm the district court's decision.